Electronically FILED by Superior Court of California, County of Los Angeles on 04/02/2021 09:43 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. So, Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*



BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES
FILED

2021 APR -9 P 12: 28

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COUNTY OF LOS ANGELES, by and through the LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT; DEPUTY VILANOVA; Additional Parties Attachment Form is Attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JESSY DUENAS HERNANDEZ

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default. and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero o bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse 111 N. Hill St., Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):* 21STCV10718 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Daniel C. Sharpe, Esq. (SBN 267075); Windsor Troy; 3701 Wilshire Blvd, Suite 1111, Los Angeles, CA 90010 T: (323) 800-5405

| DATE: 04/02/2021 *(Fecha)* | Sherri R. Carter Executive Officer / Clerk of Court | Clerk, by *(Secretario)* J. So | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* County of Los Angeles, by and through the Los Angeles County Sheriff's Department
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* Governmental Entity
4. ☒ by personal delivery on *(date)* 04/09/21

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465 www.courts.ca.gov |
|---|---|---|

For your protection and privacy, please press the Clear
This Form button after you have printed the form.    [Print this form]  [Save this form]    [Clear this form]

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Jessy Duenas Hernandez v. County of Los Angeles, et al. | 21STCV10718 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (*Check only one box. Use a separate page for each type of party.*):

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

DEPUTY SANDOVAL; DEPUTY GERMAN ZAMBRANO; DEPUTY RAUL ALVAREZ; DOES 1-25, inclusive

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

| Print this form | Save this form | | Clear this form |
|---|---|---|---|

Case 2:21-cv-03937-MWF-AFM   Document 1-1   Filed 05/10/21   Page 3 of 77   Page ID #:7

Electronically FILED by Superior Court of California, County of Los Angeles on 03/19/2021 11:41 AM Sheri R. Carter, Executive Officer/Clerk of Court, by R. Perez, Deputy Clerk
21STCV10718

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Barbara Meiers

Daniel C. Sharpe, Esq. (SBN 267075)
**WINDSOR TROY**
3701 Wilshire Boulevard, Suite 1111
Los Angeles, California 90010
Phone: (323) 800-5405
Facsimile: (323) 800-5406

Attorneys for Plaintiff

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JESSY DUENAS HERNANDEZ<br><br>PLAINTIFF<br><br>v.<br><br>COUNTY OF LOS ANGELES, by and through the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; DEPUTY VILANOVA; DEPUTY SANDOVAL; DEPUTY GERMAN ZAMBRANO; DEPUTY RAUL ALVAREZ; DOES 1-25, inclusive<br><br>DEFENDANTS | No.  21STCV10718<br>**COMPLAINT FOR DAMAGES**<br><br>1. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 1st Amendment Retaliation<br>2. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Retaliation<br>3. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 4th Amendment – Unlawful Search & Seizure<br>4. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Unlawful Search & Seizure<br>5. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 1st Amendment Retaliation<br>6. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 - Retaliation<br>7. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 4th Amendment – Unlawful Use of Force<br>8. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Unlawful Use of Force<br>9. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 4th Amendment – Unlawful Use of Taser<br>10. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Unlawful Use of Taser<br>11. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 4th Amendment – Unlawful Arrest<br>12. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Unlawful Arrest<br>13. Deprivation of Civil Rights, 42 U.S.C. § 1983 -- *Monell* Liability |

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      This is a lawsuit seeking legal redress and monetary damages for the unlawful violation of Plaintiff Jessy Duenas Hernandez's civil rights under the United States Constitution and California law.

2.      Jurisdiction for such claims is conferred upon the Superior Court for the State of California in and for the County of Los Angeles, as Plaintiff asserts claims herein that are derived from the statutes and common law recognized under the laws of California and the United States, the events that give rise to litigation occurred in and around the County of Los Angeles, and the claims asserted herein warrant damages in excess of $25,000.00.

3.      On or about September 9, 2020, Plaintiff – by and through his counsel of record – submitted a Notice of Tort Claim to Defendant County of Los Angeles in compliance with the California Tort Claims Act, California Government Code § 910 *et seq.*, in support and furtherance of the claims and liability for damages arising from the events alleged herein. Because the events that are alleged to give rise to liability in violation of Plaintiff's rights occurred on or about March 10, 2020 and thereafter, the Notice of Tort Claim was timely pursuant to California Government Code § 911.2. On or about September 16, 2020, Defendant County of Los Angeles confirmed receipt of the same. On or about November 2, 2020, Defendant County of Los Angeles served written notice of the rejection of the Claim. Because this lawsuit is filed within six (6) months of the date by which Defendant County of Los Angeles rejected Plaintiff's Claim pursuant to § 945.6 of the California Government Code.

1   / / /

2   / / /

3   / / /

4   / / /

5

6

## PARTIES

4.      Plaintiff JESSY DUENAS HERNANDEZ ("Plaintiff HERNANDEZ") is an individual who at all relevant times was and is residing in the State of California, County of Los Angeles, and therefore enjoyed the protection of the laws of the State of California as well as the laws of the United States, including the protections afforded under the United States Constitution.

5.      Defendant DEPUTY VILANOVA ("Defendant VILANOVA") is a deputy sheriff employed by Defendant COUNTY OF LOS ANGELES as a member of the Los Angeles County Sheriff's Department, assigned identification number 546551, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant VILANOVA was acting in their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department.

6.      Defendant DEPUTY SANDOVAL ("Defendant SANDOVAL") is a deputy sheriff employed by Defendant COUNTY OF LOS ANGELES as a member of the Los Angeles County Sheriff's Department, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant SANDOVAL was acting in their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department.

7.      Defendant DEPUTY GERMAN ZAMBRANO ("Defendant ZAMBRANO") is a deputy sheriff employed by Defendant COUNTY OF LOS ANGELES as a member of the Los Angeles

County Sheriff's Department, assigned identification number 546564, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant VILANOVA was acting in their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department.

8.     Defendant DEPUTY RAUL ALVAREZ ("Defendant ALVAREZ") is a deputy sheriff employed by Defendant COUNTY OF LOS ANGELES as a member of the Los Angeles County Sheriff's Department, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant VILANOVA was acting in their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department.

9.     Defendant COUNTY OF LOS ANGELES ("COLA") is a California governmental entity charged with and responsible for appointing, promoting, instructing, disciplining, and supervising its employees, including in particular those employed by the Los Angeles County Sheriff's Department, including but not limited to Defendants VILANOVA, SANDOVAL, and all DOE Defendants. At all times relevant, Defendant COLA had the power, right, and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the municipality.

10.     The unknown named defendants ("DOE" Defendants) 1 through 25 include, but are not limited to, unknown deputies, sergeants, lieutenants, and captains employed by Defendant COLA, by and through either the Los Angeles County Sheriff's Department ("LASD") or some other government agency, and either committed the misconduct and/or wrongful actions or otherwise

acquiesced in the negligence or other misconduct described and attributed to the named defendants herein, resulting in injury to Plaintiff's person, well-being and property as described in more detail below. Such unknown DOE Defendants may also include policymakers who created, fostered, acquiesced, ratified, and/or maintained the policies, customs, and/or practices that caused the deprivation of Plaintiff's constitutional rights and her injuries described herein.

11.     Plaintiff is ignorant of the true names and capacities of those named as DOE Defendants but will amend or otherwise update this Complaint upon receipt of information sufficient to identify any DOE Defendants by their true names.

12.     Defendants, and each of them, committed the acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

13.     Each and every defendant who is a natural person is sued in both their individual/personal capacity, as well as in their official capacity to the extent they had any policymaking responsibilities, supervisory duties, or other involvement sufficient to allow for claims against them in their official capacity under California or federal law.

14.     At all times material herein, defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other defendant herein, and within the course and scope of such employment and agency.

15.     Plaintiff was deprived of his civil rights protected by the Constitution and/or laws of the United States of America and the laws of the State of California and has suffered injuries to his person as a result of the acts and omissions of each and every defendant identified herein, who deprived Plaintiff of his rights while acting under color of law.

## FACTS COMMON TO ALL CLAIMS

16.     Each and every allegation set forth in each and every averment of this Complaint is hereby incorporated by this reference in each and every other averment, allegation, and count herein.

17.     The INCIDENT is the series of events and circumstances that occurred on or about March 10, 2020, March 13, 2020, and thereafter, as more fully described in this pleading.

18.     Previous to the events of March 10, 2020, Plaintiff – a citizen who enjoys the right to free expression and freedom of speech as protected by the First Amendment to the United States Constitution and Article 1, § 2 of the California Constitution – maintained a collection of video recordings of police encounters involving himself and others that were in the public domain or otherwise freely available for public review and consumption. Plaintiff hosted these video recordings through an account or channel on the video platform Youtube.com, a video sharing website and streaming platform. Both through his account and otherwise, Plaintiff publicly communicated his legitimate and timely concerns of police misconduct as well as encouraged citizens generally to record police encounters in order to document incidents of police misconduct to encourage accountability for police officers that commit misconduct and discourage future incidents of misconduct by law enforcement generally. The videos posted by Plaintiff include, but are not necessarily limited to, encounters and allegations of police misconduct by members of the Los Angeles County Sheriff's Department.

19.     At all relevant times, Plaintiff enjoyed a long-standing, established right to record law enforcement officers in the course of their official duties in public areas. (See Fordyce v. City of Seattle, 55 F.3d 436 (9th Cir. 1995); see also Turner v. Lieutenant Driver, 848 F.3d 678 (5th Cir. 2017); Gericke v. Begin, 753 F.3d 1 (1st Cir. 2014); Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583 (7th Cir. 2012); Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011); Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000).)

20.     At all relevant times, Plaintiff enjoyed a long-standing, established right to publish his thoughts, opinions, and experiences regarding his belief that identifying, publishing, and promoting

video recordings of police officers engaged in suspected misconduct serves as a method of discouraging such misconduct.

21.     Prior to March 10, 2020, Plaintiff was hired by and maintained employment with *J&J Snack Foods*, located at or near 5353 South Downey Road in Vernon, California, where he worked as a forklift operator.

22.     On or about March 10, 2020, Plaintiff was working at his place of employment when Defendants VILANOVA and SANDOVAL arrived at that location and entered the private business while announcing that they were looking for an individual they identified as Enrique Garcia. Defendants VILANOVA and SANDOVAL, along with a supervisor employed by *J&J Snack Foods*, approached Plaintiff, who was operating a forklift at the time.

23.     Plaintiff ceased operating the forklift but did not get out of the forklift. The supervisor asked Plaintiff where Enrique Garcia was, a Plaintiff stated to the supervisor that he believed he was likely somewhere in the warehouse area towards the back. In doing so, Plaintiff was providing his most accurate and honest understanding of the location of a coworker. Defendants VILANOVA and SANDOVAL, who were present when Plaintiff responded to the supervisor, overheard Plaintiff's statements regarding the location of the individual apparently sought by Defendants.

24.     Defendants VILANOVA and SANDOVAL responded by stating that because Plaintiff had a tattoo on his hand and was a Hispanic male, Plaintiff matched the description of Enrique Garcia. Defendants VILANOVA and SANDOVAL further opined that Plaintiff was in fact Enrique Garcia and was lying to conceal his identity.

25.     Plaintiff, who does not resemble Enrique Garcia other than that he happens to be a Hispanic male and also has tattoos on his person, denied that he was lying and again repeated that he understood the coworker Enrique Garcia was likely in the back of the warehouse area.

26.    Defendant VILANOVA physically grabbed Plaintiff off of the forklift and attempted to twist Plaintiff's arm in a manner that caused Plaintiff to reasonably understand Defendant VILANOVA was attempting to forcibly subdue and restrain Plaintiff.

27.    At no point prior to this use of force by Defendant VILANOVA did Plaintiff do or say anything to suggest that he was a threat to himself or the Defendants or refuse to cooperate in acknowledging his understanding of where Enrique Garcia was located on the premises. Rather, Plaintiff merely acknowledged his honest understanding that the individual Defendants were seeking was in another section of the warehouse. Also, Plaintiff was not in fact Enrique Garcia.

28.    Plaintiff pulled away from Defendant VILANOVA, and immediately pulled out his personal cellphone and began recording the interaction out of fear for his safety, which was reasonable given that Defendant VILANOVA just used force without legal justification after refusing to believe that Plaintiff was not Enrique Garcia simply because Plaintiff was Hispanic and had one or more tattoos.

29.    Once Plaintiff began recording the encounter, Defendant VILANOVA ceased any further efforts to physically restrain or accost Plaintiff out of apparent fear of being recorded while engaged in misconduct.

30.    Defendants VILANOVA and SANDOVAL repeatedly questioned Plaintiff in an apparent effort to get Plaintiff to admit he was Enrique Garcia; during this questioning, Plaintiff did not feel he was free to leave Defendants' presence and continue with his job duties during this exchange. Plaintiff therefore reasonably understood he was being detained by Defendants VILANOVA and SANDOVAL in their capacity as law enforcement officers.

31.    Plaintiff repeatedly asked why he was being questioned and what crime he was suspected of committing. Defendants VILANOVA and SANDOVAL kept stating that Plaintiff did commit an unidentified crime "if you are Enrique Garcia." Plaintiff continued to honestly deny that he was Enrique Garcia.

32.     Defendants VILANOVA and SANDOVAL asserted that they were right to suspect Plaintiff of being Enrique Garcia because the supervisor identified him as Mr. Garcia. Plaintiff responded that was not true, that the supervisor merely asked Plaintiff where Enrique Garcia was.

33.     Defendant VILANOVA then asserted that Plaintiff admitted to the supervisor that he really was Enrique Garcia, which was false.

34.     Plaintiff continued to speak in a straightforward and clear manner, asserting that he was concerned that Defendant VILANOVA accosted him, and that Plaintiff wanted to de-escalate the situation.

35.     Defendant VILANOVA then took Plaintiff's phone from him without permission or legal authority to do so, aimed the camera at the supervisor, and demanded that the supervisor state that Defendant VILANOVA did not twist Plaintiff's arm behind his back. Defendant VILANOVA then aimed the camera at Plaintiff and raised his voice, demanding that Plaintiff confirm if he was in fact Enrique Garcia, which Plaintiff continued to honestly answer that he was not.

36.     Plaintiff repeatedly asked for his phone back, but Defendant VILANOVA refused to return the phone.

37.     Defendant VILANOVA then threatened to handcuff Plaintiff and take him to their police vehicle unless Plaintiff produced identification proving he was not Enrique Garcia.

38.     During the recorded interaction, Defendant VILANOVA mocked Plaintiff for attempting to record the encounter, stating that Plaintiff could put the video "on YouTube" later. Defendant VILANOVA's comments appeared calculated to humiliate and demean Plaintiff for his concerns about unjustified force and for exercising his right to record law enforcement generally.

39.     During the recorded interaction, Defendants VILANOVA and SANDOVAL again claimed that the supervisor identified Plaintiff as Enrique Garcia, which the supervisor explicitly denied, stating he did not know who Plaintiff was.

40. Defendant SANDOVAL then stepped forward within a few inches of Plaintiff's face and demanded Plaintiff produce identification.

41. Defendant VILANOVA then terminated the video recording on Plaintiff's phone, after which Defendant SANDOVAL forcibly searched Plaintiff, located his wallet and identification, then tossed the wallet and its contents on the floor.

42. Defendants VILANOVA and SANDOVAL then threatened to arrest Plaintiff with obstruction of justice if they did not successfully locate and arrest the true Enrique Garcia thereafter.

43. The events of March 10, 2020 involving Defendants VILANOVA and SANDOVAL left Plaintiff emotionally traumatized and worried that members of the Los Angeles County Sheriff's Department were prepared to assault, detain, and arrest him because Plaintiff recorded an encounter of Defendants VILANOVA and SANDOVAL detaining, assaulting, and threatening him.

44. Plaintiff posted the video recording of the encounter with Defendants VILANOVA and SANDOVAL online, making the video recording available to view publicly for anyone, including members of the Los Angeles County Sheriff's Department.

45. On or about March 13, 2020, Plaintiff took a meal break from his work shift and drove to a nearby convenience store. While driving back to his place of employment, Plaintiff noticed that he was being followed by a police vehicle bearing the markings of the Los Angeles County Sheriff's Department.

46. Plaintiff rolled down his windows and observed the police vehicle pull up next to him at a red light. Plaintiff observed two deputies in the vehicle, later identified as Defendants ZAMBRANO and ALVAREZ. The deputy defendant sitting in the passenger seat – who Plaintiff presently understands to be Defendant ALVAREZ – appeared to make eye contact with Plaintiff and nod at him, which Plaintiff took to be a polite non-verbal greeting. Plaintiff nodded in response. The light turned green, and Plaintiff continued forward on his way back to his place of employment.

47.   Defendants ZAMBRANO and ALVAREZ then activated the overhead lights and appeared to signal to Plaintiff that they were pulling him over.

48.   Plaintiff, who was aware of the history of misconduct issues among members of the Los Angeles County Sheriff's Department and had just experienced a negative, unnecessarily violent encounter with other members of the department three days prior,  put on his hazard lights in order to communicate his awareness that he was being pulled over, but continued driving slowly until he was able to pull over at an intersection or other area along the street that was well lit and where any interaction with law enforcement was more likely to be observed by witnesses.

49.   Plaintiff pulled over at or near the intersection of Slauson Avenue and Alameda Street and stepped out of his vehicle with his cellphone in his hand and the camera recording. Plaintiff chose to begin recording the encounter immediately out of concern for his safety and well-being in light of the recent encounter with members of the Los Angeles County Sheriff's Department and the fact that Defendant VILANOVA only engaged in physical violence against Plaintiff in the prior incident when Plaintiff was not recording that interaction.

50.   Defendant ZAMBRANO, who Plaintiff understands was the deputy operating the police vehicle, approached Plaintiff and angrily shouted "Did I say you could get out of the fucking car?"

51.   Plaintiff responded that he understood he had a right to step out of his vehicle and continued recording.

52.   Plaintiff did not understand that Defendant ZAMBRANO's statement was a formal command, but instead reasonably appeared to be rhetorical statement communicating Defendant ZAMBRANO's apparent anger that Plaintiff dared to exit his vehicle and record the encounter.

53.   Plaintiff did not advance from his vehicle, but instead remained standing still with his cellphone out, clearly recording the encounter, which was and is his constitutional right.

54.     Defendants ZAMBANO and ALVAREZ then physically attacked Plaintiff and forced him to the ground.

55.     Prior to attacking Plaintiff, neither Defendant ZAMBRANO nor Defendant ALVAREZ observed Plaintiff engage in any threatening or dangerous conduct that warranted using force. Plaintiff did not make any threatening movements or gestures, nor communicate any verbal threats or statements that would reasonably indicate that he was a danger to himself, the Defendants, or anyone else in the vicinity.

56.     Prior to attacking Plaintiff, neither Defendant ZAMBRANO nor Defendant ALVAREZ issued any commands or instructions to Plaintiff, such that they could not credibly believe that Plaintiff was failing to comply with any commands that would have justified using force on Plaintiff.

57.     Plaintiff landed face down on his elbows, while cradling his cellphone to prevent damage to it and allow the incident to be recorded.

58.     Plaintiff felt one of the defendants – either Defendant ZAMBRANO or Defendant ALVAREZ -- grab his cellphone and take it from his hands.

59.     Plaintiff felt one or both Defendants on top of his torso, kneeling on his back.

60.     Defendants proceeded to punch Plaintiff in the head and use elbow strikes on Plaintiff's right eye.

61.     Plaintiff felt one or both Defendants push his head down and rub Plaintiff's face against the pavement.

62.     Plaintiff felt what appeared to be the tip of a handgun pressed against the back of his head and heard one of the Defendants state: "I got one in the chamber ready for you! I'll blow a hole in your head and skull fuck you in the street and your family will never know!"

63.    Plaintiff repeatedly stated: "I can't breathe," as he was struggling to breathe normally while Defendants were on top of him, applying great weight to Plaintiff's torso and using force on his head.

64.    During the encounter, Plaintiff understands and asserts herein that one or more additional law enforcement officers employed by the Los Angeles County Sheriff's Department arrived at the scene and used force against Plaintiff or otherwise assisted Defendants ZAMBRANO and ALVAREZ in using force on Plaintiff.

65.    Defendants flipped Plaintiff over onto his back and continued to strike Plaintiff in the torso and face.

66.    Defendants then repeatedly used a taser weapon on Plaintiff's person, including his right thigh area. Plaintiff alleges herein that the taser use on his right thigh area was done in "drive stun" mode – meaning that the taser weapon was operated by applying the front of the taser weapon directly to Plaintiff's body, causing a substantial electrical discharge into Plaintiff's muscle tissue for the purpose of inflicting pain rather than interrupting the ability of Plaintiff to control his limbs.

67.    Defendants lifted Plaintiff's jacket and shirt up while another Defendant fired a taser weapon on the left side of Plaintiff's bare chest in what Plaintiff understood to be "dart" mode – meaning that two barbed projectiles were discharged into Plaintiff's torso, penetrating the skin and delivering additional electrical discharge into the left side of his torso.

68.    The use of a taser weapon in "dart" mode constitutes a significant level of force such that an officer's belief that the target may have committed or is at risk of committing either a misdemeanor or nonviolent felony is not itself sufficient justification to employ the taser weapon sufficient to provide constitutional support for the use of the taser weapon. (See Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010); see also Meredith v. Erath, 342 F.3d 1057, 1063 (9th Cir. 2003); Chew v.

Gates, 27 F.3d 1432, 1442-1443 (9th Cir. 1994); accord, Fogarty v. Gallegos, 523 F.3d 1147, 1160 (910th Cir. 2008); Reese v. Herbert, 527 F.3d 1253, 1274 (11th Cir. 2008).)

69.     The force used by the individual Defendants was not based on any legitimate need to obtain compliance or otherwise in response to any perceived threat but was instead done out of anger and frustration that Plaintiff attempted to record interactions with law enforcement wit the intent of inflicting pain on Plaintiff.

70.     The use of the taser weapon on the left side of Plaintiff's chest violates the policies and procedures governing use of the taser weapon by members of the Los Angeles County Sheriff's Department, as it was well-established prior to March 13, 2020 that repeated use of a taser weapon – particularly in the left torso near the heart – creates a high risk of serious neurological and/or cardiovascular trauma unrelated to legitimate law enforcement objectives and creates a substantial risk of long-term injury, cardiac arrest, and potential death.

71.     Throughout the use of force by Defendants, Plaintiff continued to scream and call for help, as Plaintiff feared for his life and safety given that he was accosted, beaten, and repeatedly subjected to electrical shocks by a taser weapon despite not posing a threat of danger to anyone.

72.     Defendants handcuffed Plaintiff and bound his legs using a hobble restraint.

73.     Defendants then proceeded to conduct a detailed and complete search of Plaintiff's vehicle, even though Plaintiff was handcuffed and away from his vehicle.

74.     Plaintiff submits herein that the search of his vehicle was done by Defendants in order to locate any cellphone recordings or otherwise uncover and take possession of any potential evidence of Defendants' misconduct, rather than a legitimate and lawful search of a vehicle incident to arrest.

75.     Plaintiff was transported to the Community Hospital of Huntington Park, where he was handcuffed to a bed and monitored by multiple members of the Los Angeles County Sheriff's Department.

76.    A female officer approached Plaintiff and took photographs of Plaintiff's face but refused to take photographs of the injuries on Plaintiff's torso and legs. Plaintiff understands that this female officer was ostensibly documenting the injuries Plaintiff suffered from the incident but did so in a way that appeared to minimize the scope of the injuries.

77.    Later, a short male officer that appeared to be Asian American took out what appeared to be a personal cellphone and began taking pictures of Plaintiff without obtaining his permission. Plaintiff understands and asserts herein that the male officer was not documenting injuries as part of any formal process but was instead taking personal photos for his own enjoyment.

78.    Plaintiff asked the officers standing in the room near his bed what criminal charges, if any, were asserted against him to justify the arrest. Plaintiff was told in response "We'll see."

79.    Plaintiff was later taken to the Los Angeles County Sheriff's Department station in Lynwood, California – known as the "Century Station" – and booked into custody.

80.    During the booking process, Plaintiff was given paperwork to review and sign. A deputy instructed Plaintiff to sign the paperwork, and Plaintiff responded that he needed to finish reading the documents before he signed them. The deputy then advised Plaintiff that if he did not sign the paperwork immediately, he would consider Plaintiff to be "uncooperative." Plaintiff – who was aware of well-documented incidents of police misconduct and internal gang affiliations within the Los Angeles County Sheriff's Department – signed the paperwork before he finished reading it in order to avoid being subjected to additional violence.

81.    Plaintiff was subsequently transported to the Twin Towers jail facility by two deputies employed by the Los Angeles County Sheriff's Department – one who appeared to be Hispanic and one who appeared to be African American. The deputy that appeared to be African American described to Plaintiff prior incidents where the deputy engaged in violence earlier in his career, including claiming that he once blacked out in a rage while beating a suspect, as well as an incident

apparently unrelated to his professional duties where he violently assaulted his own daughter because she was disrespectful to the deputy's parents.

82.      It was unclear to Plaintiff if the deputy's stories of prior violence were meant to intimidate Plaintiff or otherwise constitute an acknowledgement that deputies in the Los Angeles County Sheriff's Department are commonly understood to engage in severe violence on and off duty.

83.      Upon being brought into the Twin Towers jail facility, one or more administrative staff pointed out that Plaintiff was bleeding from his face, including but not limited to the orbital socket areas where Plaintiff sustained significant injury due to the force used by Defendants ZAMBRANO and ALVAREZ.

84.      Plaintiff was then taken to the LAC+USC Medical Center for further evaluation and treatment of the injuries to his face and eyes. As documented in medical records corresponding to the evaluation and treatment received at LAC+USC Medical Center, Plaintiff sustained severe injury to his face and eyes, including significant swelling, such that Plaintiff's right eye was swollen shut, and had limited, spotty vision in his left eye, all of which was separate and apart from the injuries sustained to his body due to physical blows and repeated use of a taser weapon by Defendants.

85.      Subsequent to the arrest of Plaintiff, Defendant ALVAREZ drafted a report of the arrest that contained multiple false representations, all of which were intentionally asserted by Defendant ALVAREZ to justify the unlawful force used by himself and Defendant ZAMBRANO.

86.      In his report, Defendant ALVAREZ falsely claimed that Plaintiff was driving erratically to provide pretextual justification for the traffic stop.

87.      In his report, Defendant ALVAREZ asserted that Defendant ZAMBRANO ordered Plaintiff to return to his vehicle, when in fact Defendant ZAMBRANO merely shouted at Plaintiff that he did not give Plaintiff permission to exit his vehicle, asserted to suggest that Plaintiff did not comply with a command from a police officer prior to the use of force.

88.     In his report, Defendant ALVAREZ asserted that Plaintiff advanced on Defendant ZAMBRANO in a fighting stance, when in fact Plaintiff remained still while holding out his cellphone to record the encounter. This was alleged to give the appearance that Defendants ZAMBRANO and ALVAREZ reacted to aggression from a criminal suspect, when in fact the Defendants initiated violence against Plaintiff without legal justification.

89.     In his report, Defendant ALVAREZ asserted that Plaintiff had assaulted Defendant ZAMBRANO and recommended that Plaintiff be charged with violations of California Penal Code § 69 and § 243(b). This recommendation was based on Defendant ALVAREZ's false representations, including but not limited to the false claim that Plaintiff attempted to fight Defendant ZAMBRANO when in fact Plaintiff merely attempted to record the encounter out of fear for his own safety.

90.     Despite participating in the incident and using force on Plaintiff, Defendant ZAMBRANO did not document his use of force or otherwise prepare any report regarding his own actions during the incident.

91.     On information and belief, Plaintiff asserts herein that Defendant ALVAREZ prepared his report with numerous false allegations that Plaintiff resisted arrest or otherwise attempted to fight Defendant ZAMBRANO in order to (1) justify Defendants' use of violent force against Plaintiff; and (2) to encourage the filing of charges against Plaintiff to discredit Plaintiff's description of events in any future court proceedings.

92.     On information and belief, Plaintiff asserts herein that Defendant ALVAREZ recommended that Plaintiff be charged with felony assault on an officer in violation of Cal. Pen. Code § 69 and battery on an officer in violation of Cal. Pen. Code § 243(b) because Defendant ALVAREZ knew that an element of those statutory offenses includes the assertion that the Defendant officers were engaged in the lawful performance of their duties during the stop and subsequent use of force, and

therefore any conviction of such a charge would act as a procedural bar to any subsequent claim by Plaintiff that Defendants ALVAREZ or ZAMBRANO acted unlawfully in violation of his rights.

93.     At the time that Plaintiff was booked into custody, a "Booking and Property Record" was generated that – among other items – identified that two cell phones were confiscated along with other personal affects belonging to Plaintiff. However, when Plaintiff was released only one cellphone was returned to him. The cellphone with which Plaintiff attempted to film the encounter with Defendants prior to their violent use of force was not returned to Plaintiff.

94.     Based on Defendant ALVAREZ's report – including the false representations contained therein – criminal charges were brought against Plaintiff, including a charge of battery on Defendant ZAMBRANO under California Penal Code § 243(b) and two charges of resisting Defendants ZAMBRANO and ALVAREZ under California Penal Code § 148(a). Those charges were subsequently dismissed.

95.     During the course of the criminal prosecution of Plaintiff on the basis of Defendant ALVAREZ's report, the Defendants represented to the prosecuting attorneys that no second cellphone device remained in the custody or control of the Los Angeles County Sheriff's Department and attempts to follow up with administrative staff employed at jail facilities confirm that Plaintiff's second cellphone is not being held in booking at any jail facility. Plaintiff therefore alleges herein that Defendants destroyed or removed the cellphone from booking prior to Plaintiff's release from custody and return of his property, which constitutes destruction of evidence to conceal their own misconduct in detaining, assaulting, and arresting Plaintiff on or about March 13, 2020.

96.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the constitutional rights of Plaintiffs and a purposeful effort to infringe on the same. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are warranted under the law.

## FIRST CAUSE OF ACTION

## DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

## FIRST AMENDMENT RETALIATION

### Against Defendants VILANOVA, SANDOVAL, and DOES 1-25

97.     Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

98.     At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law and equal protection of the laws and under the First Amendment to be free from retaliation for exercise of their free speech rights were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

99.     As described elsewhere in this Complaint, on March 10, 2020 Defendants VILANOVA and SANDOVAL detained and repeatedly questioned Plaintiff, demanding that Plaintiff admit he was Enrique Garcia. Uncomfortable with the manner in which Defendants VILANOVA and SANDOVAL were questioning him, Plaintiff began to film the encounter for his own safety. Defendants VILANOVA and SANDOVAL then escalated the encounter, mocked Plaintiff for exercising his right to record the encounter, then took Plaintiff's phone from him and turned off the recording. Defendant SANDOVAL then took Plaintiff's wallet from him and tossed its contents onto the floor, and Defendant VILANOVA threatened Plaintiff with arrest for obstruction of justice.

100.     Plaintiff's act of honestly denying that he was Enrique Garcia as well as recording the encounter with Defendant VILANOVA and SANDOVAL constituted activities protected under the First Amendment to the United States Constitution.

101.    The actions of Defendants VILANOVA and SANDOVAL – including but not necessarily limited to taking Plaintiff's cellphone, terminating the recording, tossing Plaintiff's wallet and possessions onto the ground, and threatening to arrest Plaintiff for obstruction of justice – were all substantially motivated by Plaintiff's decision to exercise his rights under the First Amendment, were not supported by any legitimate effort to conduct a criminal investigation but instead were naturally and reasonably intended to intimidate Plaintiff, and therefore constitute retaliation in violation of the First Amendment to the United States Constitution.

102.    The actions of Defendants as described herein would chill a person of ordinary firmness, and reasonably discourage others similarly situated from continuing to record encounters with law enforcement for fear of retaliatory abuse by law enforcement officers.

103.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic damages in the form of medical costs incurred for treatment of their physical, psychological and emotional injuries, in amounts subject to proof at trial.

104.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to the physical injuries to their person, psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

105.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

106.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic rights and dignity of individuals under the jurisdiction of the United States, including Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – SUPPRESSION OF FREE SPEECH**

**As to Defendants VILANOVA, SANDOVAL, COUNTY OF LOS ANGELES, and DOES 1-25**

107.      Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

108.      The California Constitution, Article I, § 2 provides: "Every person may freely speak, write, and publish his or her sentiments on all subjects …" and has been interpreted to be consistent with the protections afforded under the First Amendment to the United States Constitution with respect to freedom of speech and freedom from retaliation for exercising the right to speak. At all times material, Plaintiff was legally entitled to speak freely pursuant to the First Amendment to the United States Constitution as well as Article I, § 2 of the California Constitution, both of which include the right of a private citizen to record an encounter with law enforcement.

109.      California Civil Code § 52.1 – referred to as the "Tom Bane Civil Rights Act" – allows any individual to bring a civil claim against a government actor who has interfered with or attempted to interfere with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California.

110.      On or about March 10, 2020, Defendants VILANOVA and SANDOVAL interfered with Plaintiff's exercise of his First Amendment rights within the meaning of § 52.1(b). Defendants repeatedly demanded that Plaintiff admit he was Enrique Garcia, which Plaintiff refused to do because he is not that person, forcibly took Plaintiff's wallet and emptied its contents on the floor in front of Plaintiff, and then threatened Plaintiff with arrest for obstruction of justice. Such harassment and threat of arrest in response to the exercise of protected First Amendment rights constitutes a violation of § 52.1. (See Cuviello v. City and County of San Francisco, 940 F.Supp.2d 1071, 1103

(N.D. Cal. 2013); see also Ennis v. City of Daly City, 756 F.Supp.2d 1170, 1177 (N.D. Cal. 2010); Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept., 387 F.Supp.2d 1084, 1103-04 (N.D. Cal. 2005).)

111.     During the encounter and as a direct result of Defendant VILANOVA attempting to physically accost Plaintiff, Plaintiff began recording the encounter using his cellphone camera. In response, Defendants mocked Plaintiff then Defendant VILANOVA took the cellphone from Plaintiff and terminated the recording prior to Defendant SANDOVAL searching Plaintiff, removing Plaintiff's wallet, and then tossing the contents on the ground. Defendants VILANOVA and SANDOVAL then threatened Plaintiff with arrest for obstruction of justice.

112.     The actions of Defendants VILANOVA and SANDOVAL were substantially motivated by Plaintiff's decision to exercise his rights under the First Amendment by recording the encounter.

113.     The actions of Defendants VILANOVA and SANDOVAL constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See Cornell v. City of San Francisco (2017) 17 Cal.App.5th 766, 801-802.)

114.     The actions of Defendants constituted a "chilling effect" on Plaintiffs' right to freely speak and served to discourage Plaintiffs and others from exercising their free speech rights in the presence of members of the Los Angeles County Sheriff's Department, including but not limited to the right to record encounters with law enforcement. Any reasonable person similarly situated would have likely been reasonably discouraged from engaging in the lawful recording of law enforcement during a police encounter if they were also subjected to retaliatory misconduct including unjustified search of their person, threats of arrest, use of force, and accusations of serious criminal misconduct.

115.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

116.     Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

117.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private citizens within the jurisdiction of the City of San Bernardino, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

118.     Defendants performed the aforementioned wrongful acts in the course and scope of their employment with the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior,* and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

/ / /

/ / /

/ / /

/ / /

### THIRD CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

### FOURTH AMENDMENT -- UNLAWFUL SEARCH & SEIZURE

**Against Defendants VILANOVA, SANDOVAL, DOES 1-25**

119.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

120.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from unlawful searches and seizures under the Fourth Amendment was in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

121.    On March 10, 2020, while questioning Plaintiff in an apparent attempt to get Plaintiff to concede that he was an individual named Enrique Garcia, Defendant SANDOVAL forcibly grabbed Plaintiff, searched his person, took his wallet, and tossed its contents onto the floor. Defendant SANDOVAL did so without permission from Plaintiff, any reasonable suspicion of criminal wrongdoing, or even the existence of any articulable facts to support a belief that Plaintiff was armed or otherwise possessed a weapon. This conduct violated Plaintiff's right under the Fourth Amendment to be free from unreasonable searches and seizures.

122.    During the incident on March 10, 2020, Defendant VILANOVA aided, abetted, and assisted Defendant SANDOVAL in performing an illegal search and seizure of Plaintiff's person by forcibly taking Plaintiff's cellphone from him and terminating the recording of the incident so there would not be video evidence of Defendant SANDOVAL physically accosting Plaintiff and searching him in violation of the Fourth Amendment.

123.    Defendants' actions as described herein constitute willful and purposeful violation of the Fourth Amendment right to be free from unlawful searches and seizures.

124.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to physical injuries, psychological harm, emotional distress, and pain and suffering, for which Plaintiff continues to seek treatment.

125.     As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will continue to be incurred in the future with respect reasonably necessary medical treatment for the injuries suffered due to Defendants' actions.

126.     Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

127.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the treatment of private citizens under the law. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

## FOURTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – UNLAWFUL SEARCH & SEIZURE

### Against Defendants VILANOVA, SANDOVAL, COUNTY OF LOS ANGELES, DOES 1-25

128.     Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

129.     The California Constitution, Article I, § 13 provides contains identical text to the Fourth Amendment to the United States Constitution and has been interpreted to be consistent with the protections afforded under the Fourth Amendment to the United States Constitution with respect to freedom from searches and seizures unsupported by either a warrant or probable cause. At all times

material. Plaintiff was legally entitled to the right to be free from unlawful searches and seizures under the Fourth Amendment to the United States Constitution as well as Article I, § 13 of the California Constitution.

130.     California Civil Code § 52.1 – referred to as the "Tom Bane Civil Rights Act" – allows any individual to bring a civil claim against a government actor who has interfered with or attempted to interfere with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California.

131.     On or about March 10, 2020, Defendant SANDOVAL forcibly searched Plaintiff, took his wallet, and emptied its contents onto the floor during the course of a custodial detention. At the time, Defendant SANDOVAL did not observe any reasonably articulable facts to support a reasonable suspicion that Plaintiff had committed a crime, or to support a reasonable suspicion that Plaintiff was concealing a weapon or otherwise posed a danger to Defendants. Defendant SANDOVAL therefore did not have legal cause to forcibly search Plaintiff's person and the search violated Plaintiff's Fourth Amendment rights.

132.     Defendant VILANOVA aided, abetted, and assisted Defendant SANDOVAL in performing an illegal search and seizure of Plaintiff's person by forcibly taking Plaintiff's cellphone from him and terminating the recording of the incident so there would not be video evidence of Defendant SANDOVAL physically accosting Plaintiff and searching him in violation of the Fourth Amendment.

133.     The actions of Defendants VILANOVA and SANDOVAL constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802.)

134.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which he continues to seek treatment.

135.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

136.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private individuals, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

137.    Defendants performed the aforementioned wrongful acts in the course and scope of their employment as law enforcement officers employed by the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## FIFTH CAUSE OF ACTION

## DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

## FIRST AMENDMENT RETALIATION

### Against Defendants ZAMBRANO, ALVAREZ, and DOES 1-25

138.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

139.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law and equal protection of the laws and under the First Amendment to be free from retaliation for exercise of their free speech rights were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

140.    As described elsewhere in this Complaint, on March 13, 2020 Defendants ZAMBRANO and ALVAREZ observed Plaintiff driving lawfully and in obeyance of relevant traffic laws. Defendants pulled up alongside Plaintiff at a stopped red light and Defendant ALVAREZ nodded to Plaintiff. Plaintiff responded by nodding, then pulled forward after the light turned green. Defendants then immediately attempted to pull Plaintiff over.

141.    Plaintiff activated his emergency lights and slowed his speed but delayed pulling over until he arrived at an intersection where he believed there may be passersby as witnesses to the police encounter, due to his legitimate fear of intimidation and harassment after his experience with Defendants VILANOVA and SANDOVAL three days prior.

142.    Plaintiff then pulled over and exited his vehicle with his cellphone out, openly recording the encounter as Defendant ZAMBRANO approached. Defendant ZAMBRANO shouted and cursed at Plaintiff for exiting his vehicle, and both Defendants ZAMBRANO and ALVAREZ proceeded to use force to tackle Plaintiff, repeatedly punch and strike Plaintiff in the face and body, and then use a

taser weapon on Plaintiff as he acknowledged difficulty breathing due to Defendants on top of Plaintiff while striking him in the head.

143.   At no point prior to the use of force did Plaintiff do or say anything that would reasonably indicate to Defendants ZAMBRANO or ALVAREZ that Plaintiff posed an immediate danger to Defendants, himself, or anyone else in the area. Plaintiff did not make any threatening gestures or otherwise communicate the presence of a weapon on his person. Plaintiff merely stood by his vehicle while holding his cellphone to record the encounter.

144.   The actions of Defendants ZAMBRANO and ALVAREZ in engaging in unjustified and violent force on Plaintiff were substantially motivated by Plaintiff's decision to lawfully record the police encounter using his cellphone, which constitutes retaliation in violation of the First Amendment to the United States Constitution.

145.   The actions of Defendants as described herein would chill a person of ordinary firmness, and reasonably discourage others similarly situated from continuing to record encounters with law enforcement for fear of retaliatory abuse by law enforcement officers.

146.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic damages in the form of medical costs incurred for treatment of their physical, psychological and emotional injuries, in amounts subject to proof at trial.

147.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to the physical injuries to their person, psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

148.   Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

149.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic rights and dignity of individuals under the jurisdiction of the United States, including Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

## SIXTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – SUPPRESSION OF FREE SPEECH

### As to Defendants ZAMBRANO, ALVAREZ, COUNTY OF LOS ANGELES, and DOES 1-25

150.     Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

151.     The California Constitution, Article I, § 2 provides: "Every person may freely speak, write, and publish his or her sentiments on all subjects …" and has been interpreted to be consistent with the protections afforded under the First Amendment to the United States Constitution with respect to freedom of speech and freedom from retaliation for exercising the right to speak. At all times material, Plaintiff was legally entitled to the right to freely speak under the First Amendment to the United States Constitution as well as Article I, § 2 of the California Constitution, both of which include the right of a private citizen to record an encounter with law enforcement.

152.     California Civil Code § 52.1 – referred to as the "Tom Bane Civil Rights Act" – allows any individual to bring a civil claim against a government actor who has interfered with or attempted to interfere with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California.

153.     On or about March 13, 2020, Defendants ZAMBRANO and ALVAREZ immediately used force in response to Plaintiff stepping out of his vehicle and attempting to record the encounter using

his cellphone camera, including tackling Plaintiff to the ground, repeatedly striking Plaintiff on the face and body, and repeatedly using a taser weapon in a manner that risked unnecessary neurological and cardiovascular injury to Plaintiff.

154.    The actions of Defendants ZAMBRANO and ALVAREZ were substantially motivated by Plaintiff's decision to exercise his rights under the First Amendment by recording the encounter, as well as were likely motivated by awareness that Plaintiff previously recorded interactions with the members of the Los Angeles County Sheriff's Department and used his YouTube channel to publicly disclose such recordings and encourage fellow citizens to do the same in an effort to discourage police misconduct.

155.    The actions of Defendants constituted a "chilling effect" on Plaintiffs' right to freely speak and served to discourage Plaintiffs and others from exercising their free speech rights in the presence of members of the Los Angeles County Sheriff's Department, including but not limited to the right to record encounters with law enforcement. Any reasonable person similarly situated would have likely been reasonably discouraged from engaging in the lawful recording of law enforcement during a police encounter if they were also subjected to retaliatory misconduct including unjustified search of their person, threats of arrest, use of force, and accusations of serious criminal misconduct.

156.    The actions of Defendants ZAMBRANO and ALVAREZ constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves, particularly where the means used by Defendants interfere with the exercise of an activity protected under the First Amendment involves violence. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802; see also Ennis v. City of Daly City, 756 F.Supp.2d 1170, 1177 (N.D. Cal. 2010); accord Cuviello v. City and County of San Francisco, 940 F.Supp.2d 1071, 1103 (N.D. Cal. 2013).)

157.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

158.     As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that will be reasonably incurred in obtaining medical treatment needed as a result of the actions of Defendants in causing injury to Plaintiff.

159.     Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

160.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private citizens within the jurisdiction of the City of San Bernardino, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

161.     Defendants performed the aforementioned wrongful acts in the course and scope of their employment with the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

/ / /

/ / /

/ / /

/ / /

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**FOURTH AMENDMENT -- UNLAWFUL USE OF FORCE**

**Against Defendants ZAMBRANO, ALVAREZ, DOES 1-25**

162.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

163.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from excessive force under the Fourth Amendment were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of their constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

164.    On March 13, 2020, Defendants ZAMBRANO and ALVAREZ pulled up next to Plaintiff at a red light. Defendant ALVAREZ looked directly at Plaintiff and nodded to him. Plaintiff nodded in response as a good faith gesture of acknowledgement and respect to Defendants. When the light changed to green, Plaintiff proceeded forward in a safe and lawful manner. Defendants immediately attempted to pull Plaintiff over.

165.    Due to the actions of Defendants VILANOVA and SANDOVAL three days prior – who were and are members of the same sheriff's department whose insignias were on the vehicle operated by Defendants ZAMBRANO and ALVAREZ – Plaintiff became fearful for his safety and activated his emergency lights while slowing down to look for a public area to pull over so that the encounter might be witnessed by passersby. Plaintiff then pulled over at a nearby intersection and exited the vehicle with his cellphone in his hand, recording the encounter.

166.    Plaintiff was unarmed, was standing still, and was not engaged in any activity that could have been reasonably interpreted as threatening or dangerous.

167.   Defendant ZAMBRANO did not give any verbal commands, instructions, or warnings to Plaintiff. Instead, Defendant ZAMBRANO shouted the rhetorical question: "Did I say you could get out of the fucking car?"

168.   At all relevant times, Defendants ZAMBRANO and ALVAREZ knew or should have known that suspicion of a traffic violation does not alone justify using force during the traffic stop.

169.   Defendants ZAMBRANO and ALVAREZ physically attacked Plaintiff and used violent force on him, including but not necessarily limited to tackling Plaintiff, pressing Plaintiff's face and head to the pavement and forcibly rubbing his face against the same, and repeatedly striking Plaintiff on the face and body while pushing their body weight on Plaintiff as he attempted to acknowledge his difficulty breathing.

170.   Plaintiff asserts herein that Defendants ZAMBRANO and ALVAREZ were not attempting to subdue him as a non-complaint or dangerous suspect, but instead were engaged in willful and purposeful violence to injure and punish Plaintiff for the perceived lack of fealty to them as police officers based on Plaintiff stepping out of his vehicle and recording the encounter.

171.   At no point prior to the use of force did Defendants encounter any specific articulable facts that would justify immediately using force on Plaintiff as described herein, who was not engaged in any observable activity that could be construed as dangerous or otherwise justifying the use of force, but instead was attempting to make sure that the encounter with Defendants ZAMBRANO and ALVAREZ occurred in an area where it could be observed by witnesses and was recorded using his cellphone.

172.   Defendants' actions as described herein constitute willful and purposeful violation of Plaintiff's right to be free from excessive force under the Fourth Amendment.

173.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to physical injuries, psychological harm, emotional distress, and pain and suffering, for which Plaintiff continues to seek treatment.

174.     As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will continue to be incurred in the future with respect reasonably necessary medical treatment for the injuries suffered due to Defendants' actions.

175.     Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

176.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the treatment of private citizens under the law. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.


### EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – UNLAWFUL USE OF FORCE

### As to Defendants ZAMBRANO, ALVAREZ, COUNTY OF LOS ANGELES, and DOES 1-25

177.     Plaintiff re-alleges, adopt and incorporates the preceding paragraphs as if fully set forth herein.

178.     The California Constitution, Article I, § 13 provides contains identical text to the Fourth Amendment to the United States Constitution and has been interpreted to be consistent with the protections afforded under the Fourth Amendment to the United States Constitution with respect to freedom from unlawful and excessive force. At all times material, Plaintiff was legally entitled to the

right to be free from unlawful and excessive force under the Fourth Amendment to the United States Constitution as well as Article I, § 13 of the California Constitution, both of which include the right of a private citizen not to be subjected to excessive force by a law enforcement officer without legal justification.

179.     California Civil Code § 52.1 – referred to as the "Tom Bane Civil Rights Act" – allows any individual to bring a civil claim against a government actor who has interfered with or attempted to interfere with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California.

180.     Defendants ZAMBRANO and ALVAREZ interfered with Plaintiff's right to be free from excessive and illegal force within the meaning of § 52.1(b) by immediately using serious and violent force on Plaintiff in direct response to an alleged traffic violation combined with Plaintiff's lawful decision to exit his vehicle and record Defendants with his cellphone camera. As described elsewhere herein, Defendants immediately tackled Plaintiff and repeatedly struck Plaintiff on the head and body while forcefully rubbing Plaintiff's face into the pavement, all of which was unprovoked and occurred despite Plaintiff not exhibiting any indication that Plaintiff was violent or otherwise posed a risk of harm to Defendants, himself, or anyone else in the vicinity. This use of serious and dangerous force on Plaintiff without legal justification constitutes a violation of the prohibition on unlawful use of force under both the Fourth Amendment to the United States Constitution and Article 1, § 13 of the California Constitution.

181.     The actions of Defendants constituted a willful, wanton, and malicious desire to harm Plaintiff rather than engage in any legitimate investigation of criminal wrongdoing.

182.     The actions of Defendants ZAMBRANO and ALVAREZ constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves.

The actions of Defendants also constitute threats, intimidation, and coercion within the meaning of § 52.1 as the use of force in violation of constitutional rights satisfies the "threat, intimidation or coercion" element of § 52.1. (See *Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, 799-802; see also <u>Reese v. County of Sacramento</u>, 888 F.3d 1030, 1043 (9th Cir. 2018.)

183.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

184.    As a direct and proximate result of Defendants' actions, Plaintiff has incurred and will continue to incur economic damages in the form of costs for medical treatment due to the injuries suffered from the violent acts of Defendants.

185.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

186.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private individuals, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

187.    Defendants performed the aforementioned wrongful acts in the course and scope of their employment as law enforcement officers employed by the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

## NINTH CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

## FOURTH AMENDMENT -- UNLAWFUL USE OF TASER

### Against Defendants ZAMBRANO, ALVAREZ, DOES 1-25

188.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

189.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from unlawful use of a taser weapon under the Fourth Amendment were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of their constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

190.    On March 13, 2020, and during the use of violent force by Defendants ZAMBRANO and ALVAREZ against Plaintiff during the purported traffic stop, Defendants ZAMBRANO and ALVAREZ unnecessarily and without legal justification escalated their violent physical attack on Plaintiff from using their fists and legs to strike Plaintiff to using a taser weapon against Plaintiff.

191.    During the course of their violent attack on Plaintiff, Defendant ZAMBRANO, and possibly others, repeatedly used a taser weapon on Plaintiff including several times in Plaintiff's right thigh as well as firing the taser weapon in "dart" mode into Plaintiff's left torso.

192.    The use of the taser weapon as described herein did not meet the constitutional requirements established prior to the date of the incident because Defendants did not have a reasonable belief that Plaintiff had committed or was in the process of committing a violent felony. Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010); see also Meredith v. Erath, 342 F.3d 1057, 1063 (9th Cir. 2003); Chew v. Gates, 27 F.3d 11432, 1442-1443, (9th Cir. 1994); accord, Fogarty v. Gallegos, 523 F.3d 1147, 160 (910th Cir. 2008), Reese v. Herbert, 527 F.3d 1253, 1274 (11th Cir. 2008).

193.    At all times material, Defendant ALVAREZ was aware of Defendant ZAMBRANO's intent to use a taser weapon on Plaintiff, and personally participated in Defendant ZAMBRANO's use of the taser weapon on Plaintiff. Such personal participation included holding Plaintiff down and lifting Plaintiff's shirt to assist Defendant ZAMBRANO as he aimed and discharged the taser weapon. Defendant ALVAREZ also prepared his report of the INCIDENT to provide false representations in order to create plausible legal justification for Defendant ZAMBRANO's use of the taser weapon.

194.    Plaintiff asserts herein that Defendants ZAMBRANO and ALVAREZ were not attempting to subdue him as a non-complaint or dangerous suspect, but instead were engaged in willful and purposeful violence to injure and punish Plaintiff for the perceived lack of fealty to them as police officers based on Plaintiff stepping out of his vehicle and recording the encounter.

195.    Defendants knew or should have known prior to March 13, 2020 that repeated use of taser weapons on humans – including in particular use of the taser weapon on the left torso area near the heart – is highly dangerous and risks serious neurological and cardiac events, including but not limited to cardiac arrest and death.

196.    Defendants knew or should have known prior to March 13, 2020 that use of the taser weapon on a suspect in the absence of a reasonable and articulable belief that a suspect is engaged in a violent felony constitutes unlawful force in violation of the Fourth Amendment.

197.    At no point prior to the use of the taser weapon did Defendants encounter any specific articulable facts that would justify the use of the taser weapon against Plaintiff as described herein, who was not engaged in any observable activity that could be construed as dangerous or otherwise justifying the use of force, but instead was attempting to record the encounter with Defendants ZAMBRANO and ALVAREZ using his cellphone.

198.    Defendants' actions as described herein constitute willful and purposeful violation of Plaintiff's right to be free from excessive force under the Fourth Amendment.

199.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to physical injuries, psychological harm, emotional distress, and pain and suffering, for which Plaintiff continues to seek treatment.

200.     As a direct and proximate result of Defendants' actions, Plaintiff has incurred and will continue to incur economic damages in the form of costs for medical treatment due to the injuries suffered from the violent acts of Defendants.

201.     Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

202.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the treatment of private citizens under the law. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

**TENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – UNLAWFUL USE TASER**

**As to Defendants ZAMBRANO, ALVAREZ, COUNTY OF LOS ANGELES, and DOES 1-25**

203.     Plaintiff re-alleges, adopt and incorporates the preceding paragraphs as if fully set forth herein.

204.     The California Constitution, Article I, § 13 provides contains identical text to the Fourth Amendment to the United States Constitution and has been interpreted to be consistent with the protections afforded under the Fourth Amendment to the United States Constitution with respect to freedom from unlawful and excessive force. At all times material, Plaintiff was legally entitled to the

right to be free from unlawful and excessive force under the Fourth Amendment to the United States Constitution as well as Article I, § 13 of the California Constitution, both of which include the right of a private citizen not to be subjected to use of a taser weapon by a law enforcement officer without legal justification.

205.     California Civil Code § 52.1 – referred to as the "Tom Bane Civil Rights Act" – allows any individual to bring a civil claim against a government actor who has interfered with or attempted to interfere with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California.

206.     Defendants ZAMBRANO and ALVAREZ interfered with Plaintiff's right to be free from excessive and illegal force within the meaning of § 52.1(b) by using serious and violent force on Plaintiff in direct response to an alleged traffic violation combined with Plaintiff's lawful decision to exit his vehicle and record Defendants with his cellphone camera. As described elsewhere herein, after tackling Plaintiff and repeatedly struck Plaintiff on the head and body while forcefully rubbing Plaintiff's face into the pavement, Defendant ZAMBRANO – with the agreement, acquiescence, and support of Defendant ALVAREZ who personally participated in the same – repeatedly used a taser weapon on Plaintiff. This included discharging the taser weapon in "stun mode" into Plaintiff's thigh before discharging the taser weapon in "dart mode" into the left side of Plaintiff's torso.

207.     The use of the taser weapon by Defendant ZAMBRANO was unprovoked and occurred despite Plaintiff not exhibiting any indication that Plaintiff was violent or otherwise posed a risk of harm to Defendants, himself, or anyone else in the vicinity. The use of the taser weapon was a part of the escalating and violent force used by Defendants in response to Plaintiff standing outside his vehicle and recording the approaching officers using his cellphone, all of which was and is lawful, and constitutes a violation of the prohibition on unlawful use of force under both the Fourth Amendment to the United States Constitution and Article I, § 13 of the California Constitution.

208.     The actions of Defendants ZAMBRANO and ALVAREZ with respect to the use of the taser weapon against Plaintiff constitute violations of California Civil Code 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. The actions of Defendants also constitute threats, intimidation, and coercion within the meaning of § 52.1 as the use of force in violation of constitutional rights satisfies the "threat, intimidation or coercion" element of § 52.1. (See *Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, 799-802; see also Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018.)

209.     The actions of Defendants also constitute threats, intimidation, and coercion within the meaning of § 52.1 as the use of force in violation of constitutional rights satisfies the "threat, intimidation or coercion" element of § 52.1. (See *Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, 799; see also Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018.)

210.     The actions of Defendants constituted a willful, wanton, and malicious desire to harm Plaintiff rather than engage in any legitimate investigatory traffic stop or detention of Plaintiff.

211.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

212.     As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will reasonably be incurred into the future with respect to medical treatment needed as a result of the actions of Defendants.

213.     Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

214.   The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private individuals, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

215.   Defendants performed the aforementioned wrongful acts in the course and scope of their employment as law enforcement officers employed by the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

## ELEVENTH CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### FOURTH AMENDMENT – UNLAWFUL ARREST
### Against Defendants ZAMBRANO, ALVAREZ, DOES 1-25

216.   Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

217.   At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from warrantless arrests absent probable cause was in full force and effect. and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

218.    As described elsewhere in this pleading, Defendants ZAMBRANO and ALVAREZ initiated a traffic stop of Plaintiff, then physically attacked Plaintiff after he exited the vehicle and began recording the encounter, including tackling Plaintiff, punching and striking Plaintiff on the face and body, and repeated discharge of a taser weapon on Plaintiff's person while he communicated difficulty breathing.

219.    Thereafter, Defendants arrested Plaintiff and held him in custody in the Los Angeles County Jail system on felony charges of assault on an officer and resisting arrest.

220.    Defendants justified the arrest by falsely accusing Plaintiff of exhibiting signs of being dangerous – including alleging that Plaintiff approached Defendant ZAMBRANO, alleging Plaintiff balled his fists and engaged in "fidgety" movements, and alleging that Plaintiff somehow punched Defendant ZAMBRANO while Plaintiff was lying face-down and struggling to breath as his head was pressed into the pavement while Defendants repeatedly struck Plaintiff in the face.

221.    As evidence of the supposed injuries to Defendants ZAMBRANO and ALVAREZ, Defendants submitted reports that acknowledged redness and/or swelling to the right hands of both Defendants ZAMBRANO and ALVAREZ, which Plaintiff asserts were caused by Defendants ZAMBRANO and ALVAREZ repeatedly punching Plaintiff as described herein.

222.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to physical injuries, psychological harm, emotional distress, and pain and suffering, for which he continues to seek treatment.

223.    As a direct and proximate result of Defendants' actions, Plaintiff has incurred and will continue to incur economic damages in the form of costs for medical treatment due to the injuries suffered from the violent acts of Defendants.

224.     Plaintiff RODRIGUEZ has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, he is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

225.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the civil rights of Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

## TWELFTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – FALSE ARREST

#### Against Defendants ZAMBRANO, ALVAREZ, and DOES 1-25

226.     Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

227.     The California Constitution, Article I, § 13 contains text identical to the Fourth Amendment to the United States Constitution and has been interpreted to be consistent with the protections afforded under the Fourth Amendment to the United States Constitution with respect to freedom from searches and seizures unsupported by either a warrant or probable cause, including in particular seizure by way of arrest.

228.     Plaintiff, at all times material, was legally entitled to the right to be free from unlawful searches and seizures under the Fourth Amendment to the United States Constitution as well as Article I, § 13 of the California Constitution, both of which include the right of a private citizen not to be subjected to unlawful arrest unsupported by probable cause or a valid warrant.

229.     California Civil Code § 52.1 – referred to as the "Tom Bane Civil Rights Act" – allows any individual to bring a civil claim against a government actor who has interfered with or attempted to interfere with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California.

230.     Defendants ZAMBRANO and ALVAREZ interfered with Plaintiffs' right to be free from an arrest unsupported by probable cause within the meaning of § 52.1(b). Defendants did not have a legal basis to arrest Plaintiff at the outset of the traffic stop on March 13, 2020, and so instead immediately escalated the situation by violently attacking Plaintiff who was standing by his vehicle and attempting to record the incident using his cellphone. The violent attacks included tackling Plaintiff to the ground, rubbing his face into the pavement, repeatedly striking Plaintiff's head and torso, and repeatedly using a taser weapon on Plaintiff.

231.     Thereafter, Defendants made statements to other members of the Los Angeles County Sheriff's Department – both verbally and through police reports – that falsely asserted that Plaintiff fought back or otherwise engaged in threatening behavior in an effort to justify the excessive force Defendants used on Plaintiff. In furtherance of such efforts to create facially plausible justification for their violence against Plaintiff, Defendants arrested Plaintiff for felony charges of assault on an officer and resisting arrest despite their personal knowledge that Plaintiff did not escalate the interaction or engage in any display of aggression to justify use of force against him, but instead merely stepped out of his vehicle and began recording the encounter.

232.     The actions of Defendants ZAMBRANO and ALVAREZ constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802; see also <u>Rodriguez v. County of Los Angeles</u>, 96 F.Supp.3d 990, 999 (C.D. Cal. 2014), holding that intentional arrest of

plaintiff without probable cause satisfies requirements of violation of Fourth Amendment under §

52.1 of the Bane Act.)

233.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general

damages due to psychological harm, emotional distress, and pain and suffering, for which he

continues to seek treatment.

234.    As a direct and proximate result of Defendants' actions, Plaintiff has incurred and will

continue to incur economic damages in the form of costs for medical treatment due to the injuries

suffered from the violent acts of Defendants.

235.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and

expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek

such reasonable fees and costs in amounts subject to proof at the time of trial.

236.    The conduct of the Defendants as described herein represented a willful and conscious

disregard for the basic care and treatment of private individuals, including but not necessarily limited

to Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse

of power that was malicious and purposeful such that punitive damages are allowed under the law.

Punitive damages are therefore sought against the Defendants according to proof.

237.    Defendants performed the aforementioned wrongful acts in the course and scope of their

employment as law enforcement officers employed by the Los Angeles County Sheriff's

Department. Pursuant to California Government Code § 815.2, the common law doctrine of

*Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously

liable for the misconduct of Defendants as described herein.

/ / /

/ / /

/ / /

## THIRTEENTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – *Monell*/Municipal Liability

### Against Defendant COUNTY OF LOS ANGELES

238.    Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

239.    Defendant COLA, by and through the individual policymakers and/or supervisory officials for the Los Angeles County Sheriff's Department, improperly, inadequately, or with deliberate indifference and/or reckless disregard for constitutional rights of persons, failed to properly train, supervise, retrain, monitor, or take corrective action with respect to individual employees under their supervision and control, including in particular but not necessarily limited to Defendants VILANOVA, SANDOVAL, ZAMBRANO, ALVAREZ, and DOES 1-25, and others with respect to the types of wrongful conduct alleged in this complaint, including, but not limited to the failure to enforce the law of the State of California, the unconstitutional enforcement of local ordinances and statutes, the enforcement of unconstitutional ordinances and statutes, and misuse of actual or perceived authority against individuals such as Plaintiff such that each one of them is liable legally for all injuries and/or damages sustained by Plaintiff pursuant to the legal principles set forth in Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978), Heller v. Bushey, 759 F.2d 1371 (9th Cir. 1986), cert. granted and reversed on other grounds sub nom. City of Los Angeles v. Heller, 106 S.Ct. 1573 (1986), and Larez v. Gates, 946 F.2d 630 (9th Cir. 1991), the content of all of which is incorporated herein by this reference.

240.    The following policies, customs, and practices of Defendant COLA were in effect at the time of the incidents described herein, which had the natural and foreseeable result of violating Plaintiff's established constitutional rights:

a.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who engage in excessive force without legal justification during investigations of alleged criminal activity in violation of the Fourth Amendment;

b.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who engaged in retaliation or otherwise refused to recognize the legal right of citizens to record encounters with law enforcement;

c.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who make false statements to justify using force as tacit approval of unlawful force so long as the offending deputies assert a facially plausible basis for using force;

d. Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who use force in violation of department policies;

e. Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who discharge taser weapons in violation of department policies; and

f. Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who use the authority to detain private individuals as an intimidation tactic to retaliate against complaints of police misconduct in violation of the First Amendment.

241.   Defendant COLA, by and through the Los Angeles County Sheriff's Department, owed a duty to Plaintiff and others at all times to establish, implement, and follow policies, procedures, customs, and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the First, Fourth, and Fourteenth Amendments; to use

reasonable care to select, supervise, train, control, and review the actions of all of their agents, officers, and employees; and to ensure that its members engaged in the performance of their duties in conformity with the laws of the United States.

242.    Instead, Defendants engaged in the above-described policies, practices, and customs, all of which is not unique to Plaintiff alone or constitutes an isolated incident, but is in fact a pervasive policy, practice, and custom of which Defendant COLA, by and through its various supervisors and policymakers, are aware and either expressly maintain or otherwise tacitly support through inaction.

243.    The injuries suffered by Plaintiff as described elsewhere herein, were directly, proximately, and foreseeably caused in part by the unconstitutional practices, policies, or customs, both written and unwritten, that at all relevant times were in full force and effect by Defendants and their employees, which were put in place or otherwise allowed to remain in place due to the tacit agreement of Defendants, various supervisors, managers, and policymakers, and was further exacerbated by their refusal to properly investigate such misconduct of other individuals under their supervision and authority, or discipline the same.

244.    Defendant COLA, by and through its various supervisors and policymakers, knew, or should have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it would cause Plaintiff and others to suffer constitutional injury and be damaged by the wrongful acts and omissions as alleged herein, that such breaches occurred in contravention of public policy and as to their respective legal duties and obligations to individuals within their jurisdiction.

245.    The aforementioned policies, practices, customs, and procedures, as well as the lack of adequate training and discipline as stated and shown above, were the moving force and/or substantial factor in bringing about the constitutional deprivations complained of by Plaintiff herein.

/ / /

WHEREFORE, Plaintiff respectfully prays and seek the following relief as to the Causes of Action stated above:

1. For general damages according to proof at trial, including pain, suffering, and loss of enjoyment of life;

2. For economic damages according to proof at trial, including in particular costs associated with medical and/or psychological treatment;

3. For punitive damages according to proof at trial, to the extent authorized or otherwise allowed by law; and

4. For such other relief as the Court deems proper and just.

Date: March 19, 2021          BY:    _____
                                     Daniel C. Sharpe, Esq.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands the right to a trial by jury as to all causes of action asserted herein.

Date: March 19, 2021          BY:    _____
                                     Daniel C. Sharpe, Esq.

Electronically FILED by Superior Court of California, County of Los Angeles on 03/19/2021 11:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
21STCV10718

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Daniel C. Sharpe, Esq. (SBN: 267075)<br>Windsor Troy<br>3701 Wilshire Blvd., Suite 1111, Los Angeles, CA 90010 | |
| TELEPHONE NO.: 323-800-5405       FAX NO. *(Optional)*: 323-800-5406 | |
| ATTORNEY FOR *(Name)*: Jessy Duenas Hernandez | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Jessy Duenas Hernandez v County of Los Angeles, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited    [ ] Limited<br>(Amount        (Amount<br>demanded      demanded is<br>exceeds $25,000)   $25,000) | [ ] Counter    [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 21STCV10718<br><br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | condemnation (14) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [X] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve     e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive

4. Number of causes of action *(specify)*: 13; Claims for violations of 1st & 4th Amendment Rights under 42 USC 1983 & State Laws

5. This case [ ] is   [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 18, 2021

Daniel C. Sharpe
_____                    _____
(TYPE OR PRINT NAME)                                 (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code) (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE: Jessy Duenas Hernandez v. County of Los Angeles, et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|
| **Auto Tort** | | |
| Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | | |
| Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3
Page 1 of 4

| SHORT TITLE. Jessy Duenas Hernandez v. County of Los Angeles, et. al. | | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury / Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☒ A6005  Civil Rights/Discrimination | 1, ②, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Jessy Duenas Hernandez v. County of Los Angeles, et al. | | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3

Page 3 of 4

| SHORT TITLE: Jessy Duenas Hernandez v. County of Los Angeles, et al. | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☑ 11. | Stanley Mosk Courthouse<br>111 N. Hill Street<br>Los Angeles, CA 90012 |

| CITY | STATE | ZIP CODE |
|---|---|---|
| Los Angeles | CA | 90012 |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: ___March 18, 2021___

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| | | |
|---|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp | |
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**03/19/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ R. Perez _____ Deputy | |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>21STCV10718 | |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Barbara A. Meiers | 12 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 03/19/2021
_____(Date)_____

Sherri R. Carter, Executive Officer / Clerk of Court

By R. Perez _____ , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

<u>**INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES**</u>

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

<u>**APPLICATION**</u>
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

<u>**PRIORITY OVER OTHER RULES**</u>
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

<u>**CHALLENGE TO ASSIGNED JUDGE**</u>
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

<u>**TIME STANDARDS**</u>
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

<u>**COMPLAINTS**</u>
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

<u>**CROSS-COMPLAINTS**</u>
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

<u>**STATUS CONFERENCE**</u>
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

<u>**FINAL STATUS CONFERENCE**</u>
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

<u>**SANCTIONS**</u>
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

<u>**Class Actions**</u>
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

<u>***Provisionally Complex Cases**</u>
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )     FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING     )
FOR CIVIL                          )
                                   )
                                   )
                                   )
_____)

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"** A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

   a) Trial Court Records

   Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

   b) Represented Litigants

   Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

   c) Public Notice

   The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii) Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i) Depositions;

   ii) Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv) Transcripts (including excerpts within transcripts);

   v) Points and Authorities;

   vi) Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

   Each document acompanying a single pleading must be electronically filed as a separate digital PDF document.

g) Multiple Documents

   Multiple documents relating to one case can be uploaded in one envelope transaction.

2019-GEN-014-00

  h) Writs and Abstracts

     Writs and Abstracts must be submitted as a separate electronic envelope.

  i) Sealed Documents

     If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

  j) Redaction

     Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

  a) Filed Date

    i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

    ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

  a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

    i) Any printed document required pursuant to a Standing or General Order;

    ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

    iii) Pleadings and motions that include points and authorities;

    iv) Demurrers;

    v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

    vi) Motions for Summary Judgment/Adjudication; and

    vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1. 11)  SIGNATURES ON ELECTRONIC FILING

2       For purposes of this General Order, all electronic filings must be in compliance with California

3       Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4       Division of the Los Angeles County Superior Court.

5

6          This First Amended General Order supersedes any previous order related to electronic filing,

7       and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8       Supervising Judge and/or Presiding Judge.

9

10      DATED:  May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



Superior Court of California
County of Los Angeles



Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section



Consumer Attorneys
Association of Los Angeles



Southern California
Defense Counsel



Association of
Business Trial Lawyers



California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆Los Angeles County Bar Association Litigation Section◆

◆ Los Angeles County Bar Association
Labor and Employment Law Section◆

◆Consumer Attorneys Association of Los Angeles◆

◆Southern California Defense Counsel◆

◆Association of Business Trial Lawyers◆

◆California Employment Lawyers Association◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

STIPULATION – DISCOVERY RESOLUTION

Page 1 of 3

|  |  |
|---|---|
|  |  |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding (or demanding or requesting) party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

<table>
<tr><td>NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY</td><td>STATE BAR NUMBER</td><td>Reserved for Clerk's File Stamp</td></tr>
<tr><td>TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name):</td><td>FAX NO. (Optional):</td><td></td></tr>
</table>

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION — EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

    a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c. Exchange of names and contact information of witnesses;

    d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

|  |  |
|---|---|
| SHORT TITLE | CASE NUMBER |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.   Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
     (INSERT DATE)                                        (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____                    ›_____
        (TYPE OR PRINT NAME)                                (ATTORNEY FOR PLAINTIFF)
Date:

_____                    ›_____
        (TYPE OR PRINT NAME)                                (ATTORNEY FOR DEFENDANT)
Date:

_____                    ›_____
        (TYPE OR PRINT NAME)                                (ATTORNEY FOR DEFENDANT)
Date:

_____                    ›_____
        (TYPE OR PRINT NAME)                                (ATTORNEY FOR DEFENDANT)
Date:

_____                    ›_____
        (TYPE OR PRINT NAME)                                (ATTORNEY FOR _____)
Date:

_____                    ›_____
        (TYPE OR PRINT NAME)                                (ATTORNEY FOR _____)
Date:

_____                    ›_____
        (TYPE OR PRINT NAME)                                (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:  FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE | CASE NUMBER: |
|---|---|
| (pursuant to the Discovery Resolution Stipulation of the parties) | |

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request)

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, *briefly* describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, *briefly* describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| --- | --- | --- |
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: | |

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.



## Superior Court of California, County of Los Angeles

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What Is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

### Advantages of ADR
- Saves Time: ADR is faster than going to trial.
- Saves Money: Parties can save on court costs, attorney's fees and witness fees.
- Keeps Control with the parties: Parties choose their ADR process and provider for voluntary ADR.
- Reduces stress/protects privacy: ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- Costs: If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- No Public Trial: ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. Negotiation: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. Mediation: In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   Mediation may be appropriate when the parties
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   Mediation may not be appropriate when the parties
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to arrange mediation in Los Angeles County**
Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or free (for selected cases) mediation in person or with ODR (by phone or online).

- JAMS, Inc.: Case Manager (213) 253-9776  mdawson@jamsadr.com
- Mediation Center of Los Angeles: Case Manager: (833) 476-9145  info@mediationLA.org

These organizations cannot accept every case and they may decline cases at their discretion.
Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
NOTE: This service is not available for family law, probate or small claims.

b. **Los Angeles County Dispute Resolution Programs**
https://wdacs.lacounty.gov/programs/drp/
- Free, day- of- trial mediations at the courthouse for small claims, unlawful detainers (evictions) and, at the Stanley Mosk Courthouse, limited civil. No appointment needed.
- Free or low-cost mediations before the day of trial for these and other case types.
- For ODR by phone or computer for small claims or unlawful detainer (eviction) cases before the day of trial, visit
http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations that provide mediation may be found on the internet.**

3. Arbitration: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit  http://www.courts.ca.gov/programs-adr.htm

4. Mandatory Settlement Conferences (MSC): MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit: www.lacourt.org/division/civil/settlement

Los Angeles Superior Court ADR website:  www.lacourt.org/division/civil/settlement
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm